UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
Roy Den Hollander,

        Docket No. 08 Civ 7286

    Plaintiff on behalf of himself
    and all others similarly situated,

        **CIVIL RIGHTS**
        **CLASS ACTION**
        **COMPLAINT**

       -against-

Institute for Research on Women & Gender at Columbia University;
School of Continuing Education at Columbia University;
Trustees of Columbia University in the City of New York;
U.S. Department of Education;
Margaret Spellings, U.S. Secretary of Education in her official capacity;
Board of Regents of the University of the State of New York, in his
    or her official and individual capacity;
Chancellor of the Board of Regents, Robert M. Bennett, in his official
    and individual capacity;
New York State Commissioner of the Department of Education,
    Richard P. Mills, in his official and individual capacity; and
President of the New York State Higher Education Services Corp.,
    James C. Ross, in his official and individual capacity;

       Defendants.
-------------------------------------------------------------------------------x

## I.  Introduction

1.  This class action seeks declaratory and injunctive relief and nominal damages against the defendants for the following:

    a.  The New York State and Federal defendants violate the 1st Amendment to the U.S. Constitution by aiding the establishment of the religion **Feminism** at Columbia University through the University's Women's Studies program.
    b.  The U.S. Department of Education ("USDOE") and its Secretary violate equal protection under the 5th Amendment to the U.S. Constitution by aiding the intentional discriminatory impact against men by Columbia University's Women's Studies program;
    c.  The New York State defendants violate the equal protection clause of the 14th Amendment to the U.S. Constitution (enforced by 42 U.S.C. § 1983), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), and N.Y. Civil Rights Law § 40-c by fostering, supporting and assisting the intentional discriminatory impact against men by Columbia University's Women's Studies program;
    d.  Columbia University, the Institute for Research on Women and Gender, and the School of Continuing Education carry out the intentional discriminatory impact against men of

    the Women's Studies program in violation of the equal protection clause of the 14th Amendment to the U.S. Constitution (enforced by 42 U.S.C. § 1983), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), and N.Y. Civil Rights Law § 40-c.

## II. Violation of the Establishment Clause of the First Amendment

2. The N.Y. State and Federal defendants violate the establishment clause of the First Amendment to the U.S. Constitution by aiding and advancing the modern-day religion of Feminism proselytized through the Women's Studies program by Columbia University's Institute for Research on Women and Gender ("IRWG"), which also propagates Feminism in the School of Continuing Education ("Continuing Education").

3. The establishment clause forbids government action that benefits a religion. A belief system need not be theistic in nature to be a religion but rather can stem from moral, ethical or even malevolent tenets that are held with the strength of traditional religious convictions.

4. IRWG adopts and propagates the modern-day religion of Feminism through its lectures, seminars, consciousness indoctrination sessions, publications, career preparations, counseling, historical revisionism, propagandizing, unanimity of thought labeled "politically correct," a pantheon of idols such as Mary Wollstonecraft, *de facto* disciples and apostles, and three public lecture series.

5. The IRWG website states that the Institute "is the locus of interdisciplinary feminist scholarship and teaching at Columbia University" and "[t]he [Women's Studies] program is intended to introduce students to the long arc of feminist discourse about the cultural and historical representation of nature, power, and the social construction of difference. It encourages them to engage the debates regarding the ethical and political issues of equality and justice that emerge in such discussions. And it links the questions of gender and sexuality to those of racial, ethnic, and other kinds of hierarchical difference."

6. Columbia's Continuing Education furthers the spreading of the religion Feminism by providing post-baccalaureate and alumni Women's Studies courses established by IRWG.

7. The Board of Regents of the University of the State of New York, in his or her official and individual capacity ("Regents"), and the Chancellor of the Board of Regents, in his official and individual capacity ("Chancellor"), have provided approval and support and continue to provide approval and support for the modern-day religion of Feminism as practiced at Columbia.

8. The Regents exercise legislative functions concerning the higher educational system in New York State, determine higher education policies, and establish the rules for carrying those policies into effect throughout the higher educational institutions of the State, which includes Columbia University.

9. The Regents established a policy by which Women's Studies programs would advocate and spread Feminism in New York colleges and universities, such as Columbia.

10. There is no Regent policy to establish Men's Studies programs.

11. Through the Regents power to suspend the charters of higher educational institutions in New York and its duty to approve or disapprove educational programs and curricula, the Regents control what is taught in colleges and universities in the State, including Columbia.

12. The Regents preside over the N.Y. State Department of Education, which functions as the Regents' administrative arm in carrying out the Regents' mandates and policies. The N.Y. State Department of Education's regulations for effecting the mandates and policies of the Regents must be approved or authorized by the Regents.

13. The N.Y. State Department of Education, headed by the Commissioner, formulates plans, provides funds, monitors, and coordinates higher educational programs, such as Women's Studies programs, in New York colleges and universities, including Columbia.

14. The New York State Commissioner for the Department of Education, in his official and individual capacity ("Commissioner"), under a grant of authority from the Regents, approved the initial registration and subsequent re-registrations of the Women's Studies program carried out by IRWG and provided to Continuing Education.

15. Registration and re-registration of the Women's Studies program required the program to be consistent with the Regents' Statewide Plan for Higher Education, the Regents' rules, and the N.Y. State Department of Education's regulations. Without conforming to such, the Commissioner could not approve the program, and without approval the IRWG Women's Studies program would not be credited toward a degree or a graduate certification.

16. In order to approve the Women's Studies program, the Commissioner reviewed for compliance with the Regents' standards the program's curriculum, faculty, library, academic advising, administrative oversight, financial resources, and physical facilities as provided by IRWG and Continuing Education.

17. The Commissioner, acting under authority from the Regents, administers Federal and State grants and scholarships to promote higher educational programs, such as, on information and belief, the Women's Studies program at Columbia University.

18. On information and belief, the Commissioner provides direct financial aid to Columbia University, IRWG and Continuing Education that go into promoting Feminism of the Women's Studies program.

19. The President of the New York State Higher Education Services Corporation, in his official and individual capacity ("President of HESC"), approves and provides financial assistance to Columbia University that benefits the Women's Studies program.

3

20. HESC provides loan guarantees, grants, and scholarships that enable students to fund their education at Columbia in the Women's Studies program provided by IRWG.

21. The U.S. Department of Education, with the approval of its Secretary, in her official capacity, provides financial assistance to Columbia University that benefits the Women's Studies program provided by IRWG.

22. USDOE, with the approval of its Secretary, provides grants, direct loans of federal funds, guarantees for loans from private lenders, and work-study programs that enable students to fund their education at Columbia and in the Women's Studies program at IRWG.

23. USDOE, with the approval of its Secretary, makes Federal Stafford Loans available to post-baccalaureate students in Continuing Education who can prepare for graduate school or academic advancement in Feminism through Women's Studies provided by IRWG.

24. In fiscal year 2007, USDOE provided $14.9 million in Perkins' Loans to students at Columbia of which, on information and belief, a proportion went to students in the Women's Studies program provided by IRWG.

25. In fiscal year 2007, USDOE made available to Columbia students $192.2 million from the Stafford Loan and Federal Plus Loan programs of which, on information and belief, a proportion went to students in the Women's Studies program at IRWG and post-baccalaureate students in Continuing Education taking IRWG courses.

26. Federal tuition aid grants, federal supplemental educational opportunity grants, and Pell grants were awarded to Columbia Students in the amount of $9.3 million in 2007 of which, on information and belief, a proportion went to students training in Feminism in the Women's Studies program at IRWG.

27. Total Federal awards to Columbia, as opposed to Columbia students, in 2007 were $601,300,000.  Columbia's total operating budget was $2.83 billion.  Of the total federal awards to Columbia, $15.9 million originated with USDOE.

28. Neither Federal nor State government may favor any sect; they may not adopt programs or practices which aid any religion, but both have done that in providing support and approval, directly and indirectly, for the propagating of the modern-day religion of Feminism through Women's Studies at Columbia University.

### III.  Violation of Equal Protection under the 5th and 14th Amendments

29. Columbia University, IRWG and Continuing Education discriminate on the basis of sex against men by advocating, teaching and providing training in Feminist doctrine and the application of that doctrine in order to impose a unitary belief system of Feminist orthodoxy that dictates the speech and conduct of members of the University and society at large.

30. The Feminist agenda, curriculum and practices at Columbia, IRWG and Continuing Education are motivated by prejudice toward men that leads to sex-based stereotyping of males by depicting them as the primary cause for most, if not all, the world's ills throughout history. Females, on the other hand are credited with inherent goodness who were oppressed and colonized by men.

31. Columbia, IRWG and Continuing Education advocate that the civil rights of today's males be minimized or eliminated not just as punishment for the alleged past wrongs of their forefathers but to assure the preferential treatment of modern-day females in determining the occupants of the prestigious and influential positions in current American society and into the indefinite future.

32. As a bastion of bigotry toward men, IRWG teaches, trains and advocates strategy and tactics for abridging the rights of men—rights that are guaranteed by the U.S. Constitution and advocated by the Declaration of Independence and the Universal Declaration of Human Rights.

33. Simply put: the IRWG Women's Studies program demonizes men and exalts women in order to justify discrimination against men based on collective guilt.

34. Columbia University, IRWG and Continuing Education do not balance the Feminist doctrine and dogma with a masculine curriculum or program.

35. The IRWG Women's Studies program benefits Columbia female students, female alumni and females in general without any equivalent Columbia program for providing similar benefits to male students, male alumni or males in general.

36. According to the IRWG course guide, "[p]rimary courses focus on women, gender, and/or feminist or [lesbian] perspectives." IRWG has 71 members on its faculty but only four are males.

37. Since one of the greatest powers over human beings is the power of belief, Columbia, IRWG and Continuing Education's propagation of the one-sided and fundamentally false belief system of Feminism has a disproportionately adverse impact on men and the plaintiffs.

38. The negative stereotyping of men and lack of balance at Columbia, IRWG and Continuing Education reveal a discriminatory intent motivated by bigotry and fail to serve the acquisition of knowledge for men that tends to develop and train the individual both mentally and morally.

39. Columbia, IRWG and Continuing Education's ill-will discrimination has the effect of predominantly depriving male students and male alumni of an equal educational opportunity as compared with females.

40. Men, the ones most likely to take courses providing contrary perspectives to the Feminist Women's Studies program, have no opportunity to do so whether current students, alumni or post-baccalaureate students, who take courses through Continuing Education.

41. The class represented by Roy Den Hollander consists of Columbia University's alumni men, post-baccalaureate men, and male students who would take advantage of a Men's Studies program and all the attendant benefits if offered.

42. The class members, because of their sex, are being denied an opportunity for education, knowledge, career opportunities, and acquiring skills for defending against fraudulent Feminist attacks as a result of Columbia, IRWG and Continuing Education's failure to offer a Men's Studies program.

43. Female alumni and female students, the ones most likely to take Women's Studies courses, are treated preferentially based on sex, since IRWG offers numerous Feminist courses that may lead to an undergraduate degree or a graduate certification and Continuing Education provides a post-baccalaureate Feminist program and auditing of Feminist courses.

44. Since the policies and practices of the Regents, Chancellor, Commissioner, Columbia, IRWG and Continuing Education created or approved the anti-male Feminist Women's Studies at Columbia but no countervailing Men's Studies, these defendants have shutout a substantial number of men from educational opportunities needed to counter the dissembling Feminist dogma prevalent in the governmental, social, business, political, media, and domestic spheres of modern-day life in America.

45. Columbia, IRWG and Continuing Education teach females to compete unfairly with men without providing any programs for men on how to individually defeat such unfair and discriminatory practices against them whether in college, the work force or before governmental bodies.

46. Female students and alumni of Columbia receive a public benefit without any comparable benefit provided to male students and alumni.

47. The Regents, Chancellor, Commissioner, Columbia, IRWG and Continuing Education's polices and practices effectively ban Men's Studies from Columbia with the effect of institutionalizing anti-male prejudice at the University and propagating such in the society as a whole.

48. Knowing that their actions created and perpetuate the institutionalization of prejudice toward men and the attendant harm that follows, the Regents, Chancellor, Commissioner, Columbia, IRWG and Continuing Education intentionally continue their polices and practices of ensconcing anti-male bigotry and denying males the same educational opportunity as provided females.

49. The Regents, Chancellor, Commissioner, Columbia, IRWG and Continuing Education's actions are arbitrary and completely unrelated to the goal of providing higher education.

50. The purposes of education to enlighten, elucidate, provide the practical means for furthering oneself in society, and to defend oneself against unjust attacks are thwarted when doctrines favorable to one group, even that of the majority, advocate discrimination against the minority and administrators fail to provide programs helpful to the minority in countering such discrimination.

51. While the Regents, Chancellor, Commissioner, Columbia, IRWG and Continuing Education will claim that their policies and practices are to remove obstacles to women's access to educational and career opportunities, there exists behind the public relations an invidiously discriminatory purpose as a motivating factor.

52. The following are just a few of the anti-male practices driven by prejudice that have been taken by directors of IRWG:

    a. Carolyn Heilbrun, who committed suicide in 2003, used "theory and scholarship at the expense of the lives of [men]."
    b. Jean Howard developed a $15 million hiring program at Columbia that discriminates against male teachers and stifles the freedom of thought of men.  Any male applicant for a teaching position must demonstrate a rigid conformity of thought and speech to Feminism.
    c. Marianne Hirsch and Elizabeth Povinelli, the current heads of IRWG, maintain IRWG as a center for the National Council for Research on Women, which uses IRWG work and that of other higher educational tax-exempt institutions to influence legislation through Congressional briefings that result in the discrimination of men, such as with the passage of the Violence Against Women Act.

53. Even minimizing Columbia, IRWG and Continuing Education's negative stereotyping of men, the existence of a permissible purpose cannot sustain conduct that has an impermissible effect when ill will is present.

54. The Federal and State defendants provide assistance and tangible financial aid that facilitates, reinforces, and supports discrimination motivated by malice against men at Columbia, IRWG and Continuing Education.

55. Federal and State governmental benefits also directly result in disparate treatment of men at Columbia, IRWG and Continuing Education because no comparable public assistance is provided to further the interests of male students and male alumni and no equivalent governmental largess is provided to counter anti-male discrimination.

56. The U.S. Department of Education, its Secretary, and the President of HESC knowingly assist the discrimination against men by providing financial funds to Columbia, IRWG and Continuing Education either directly or indirectly.

57. The U.S. Department of Education and its Secretary's aiding of discriminatory practices at Columbia, IRWG and Continuing Education violates the equal protection clause of the 5th Amendment to the U.S. Constitution.

58. The Regents, Chancellor, Commissioner, President of HESC, Columbia, IRWG and Continuing Education's aiding, furthering or conducting of discriminatory practices at Columbia University violates the equal protection clause of the 14th Amendment to the U.S. Constitution.

59. The Regents, Chancellor, Commissioner and President of HESC have a duty to conform educational assistance and programs to 14th Amendment standards to assure against the deprivation of rights to equal protection. They have <u>not</u> done so with respect to the IRWG Women's Studies program at Columbia.

### IV.  42 U.S.C. 1983

60. A suit to enforce individual rights protected by the 14th Amendment requires an action pursuant to 42 U.S.C. 1983:  "Every person who, under color of  [state law] … subjects [another] … to the deprivation of any rights … secured by the Constitution and [federal] laws, shall be liable to the party injured …."

61. Columbia University, IRWG and Continuing Education are "persons" under 42 U.S.C. 1983 and operate under the color of state law.

62. Columbia University is classified as an independent private institution, but unlike most others in New York, Columbia received its charter directly from the Legislature of the State of New York.

63. The Regents, Chancellor and Commissioner are arms of the State of New York.

64. Through the Regents, Chancellor and Commissioner, New York State has undertaken a policy to actively control not only the curricula of private universities, such as Columbia, but also the faculty, library, academic advising, administrative oversight, financial resources, and physical facilities.

65. Registration of higher educational institutions and programs is the basis for determining educational program eligibility for State student aid programs and for professional licensure or teacher certification.

66. The Commissioner visits and inspects Columbia, IRWG and Continuing Education for compliance with the Regents' rules and the Commissioner's regulations.

67. Through the registration and re-registration of programs by the Regents, Chancellor and Commissioner, the three authorized and continue to authorize the Women's Studies program provided by IRWG at Columbia University.  If the Regents, Chancellor and Commissioner wanted the program changed or eliminated, a mere order from them would suffice.

68. Without State authorization, the Women's Studies program and IRWG would not exist at Columbia because no credit toward an undergraduate degree, graduate certification or a post-baccalaureate course could be offered.

69. Without State authorization, Columbia, IRWG and Continuing Education and students would not receive Federal and State aid that contributes to supporting the Women's Studies program.

70. The Regents, Chancellor and Commissioner are therefore involved not simply with some activity at Columbia, IRWG and Continuing Education but with the very activity that violates the equal protection rights of the plaintiffs: the Women's Studies program.

71. The Regents and the Chancellor are a quasi-legislative body that rules over Columbia, IRWG and Continuing Education in order to implement State education law and policy through the Commissioner.

72. The Regents, Chancellor and Commissioner's involvement is therefore not ministerial but substantive.

73. The President of HESC is also an arm of the State of New York.

74. HESC provides tuition funding for Columbia students and, on information and belief, students at IRWG, through various loan, scholarship and grant programs, including the nations' largest grant program: Tuition Assistance Program.

75. The operating revenue of Columbia University relies on tuition much more heavily than endowment on which Columbia's peers largely rely.

76. The tuition funding provided by the President of HESC to Columbia, on information and belief, provides crucial financing for the anti-male discriminatory Women's Studies program.

77. The President of HESC is therefore involved in the very practice that discriminates against male students and male alumni: the plaintiff class.

78. Additional involvement of the State in the discriminatory Women's Studies program include:

   a. On information and belief, the Commissioner grants Columbia a monetary sum for every degree awarded under N.Y. Education Law § 6401, which includes degrees in Women's Studies that are the product of discrimination against men.
   b. A variety of State programs are administered by Columbia that provide financial aid to students in the form of direct grants and loans that are paid over to Columbia and, on information and belief, contribute to Continuing Education and IRWG's operations.
   c. Columbia received direct State aid in the amount of $3,447,000 for its fiscal year 2007. On information and belief, an amount of the State aid was provided to Continuing Education and IRWG.

    d. New York State helps finance the construction of facilities at Columbia, which, on information and belief, frees up financing for Continuing Education and IRWG.

79. In its early years, Columbia received real estate from the State that subsequently proved lucrative, which may be sufficient to establish state action.

## V.  Discrimination under Title IX of the Education Amendments of 1972

80. "No person in the United States shall, on the basis of sex, be … denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.

81. 45 C.F.R. 86.31 states that "education program or activity" includes any academic, … research, occupational training, or other education program or activity operated by a recipient which receives Federal financial assistance."

82. Columbia University receives federal financial assistance; therefore, Title IX requirements apply to all of the University's operations, which include the Women's Studies program provided by IRWG.

83. Even if no federal funds are earmarked for Columbia's Women's Studies program or IRWG or Continuing Education, Title IX still prohibits their discriminatory treatment of men.

84. Columbia, IRWG, and Continuing Education knowingly made decisions to provide preferential treatment for females by offering Women's Studies and not to provide equal educational opportunities to males by offering Men's Studies.

85. Columbia, IRWG, and Continuing Education based their decisions on stereotypical assumptions of males as oppressors and females as innocent victims, of males as reaping the rewards of society and females the burdens, of America as a patriarchy as opposed to what it is—a *de facto* matriarchy.

86. Columbia, IRWG, and Continuing Education provide different benefits, based on sex, to its students and alumni by offering a Women's Studies program but not a Men's Studies program.

87. Columbia, IRWG, and Continuing Education deny its male students and male alumni similar benefits that female students and female alumni receive from their Women's Studies program.

88. Columbia, IRWG, and Continuing Education not only limit but actively work against providing male students and male alumni the same advantages and opportunities that the Women's Studies program gives to female students and female alumni.

89. At Columbia University the deleterious impact of its policies and practices in favoring Women's Studies falls disproportionately on men:

   a. Male students have no opportunity to earn an undergraduate degree or a graduate certification in Men's Studies, which would "testif[y] to mastery of a body of cross-disciplinary literature and enhance employability, especially in" academia.[1]
   b. Male alumni have no opportunity to gain knowledge in a field of Men's Studies by taking continuing education courses or post-baccalaureate studies to prepare for graduate school.
   c. Male students and alumni have no opportunity to participate in or inter-react with "a vibrant interdisciplinary community of scholars, researchers and students" in the field of Men's Studies.
   d. Male students and alumni do not have the advantage of a "thoroughly interdisciplinary framework, methodological training and substantive guidance in specialized areas of research" into men's issues.
   e. The lack of a Men's Studies program denies male students and alumni the opportunity for "an education that is both comprehensive and tailored to individual needs."
   f. Male students and alumni are denied the opportunity to "undertake original research and produce advanced scholarship" in Men's Studies.
   g. Male students and alumni cannot prepare "for future scholarly work" in Men's Studies or "for careers and future training in law, public policy, social work, community organizing, journalism, medicine, and all those professions in which there is a need for critical and creative interdisciplinary thought" from the male perspective.
   h. Male students and alumni who enroll in doctoral programs and professional schools cannot take graduate courses in contra "feminist theory, inquiry, and method."

90. Columbia, IRWG, and Continuing Education fail to effectively accommodate the educational interests and abilities of male students and male alumni by offering only a curriculum in Feminism (Women's Studies) without any countervailing view.

91. Interest and ability rarely develop in a vacuum; they evolve as a function of opportunity and experience, so any argument that Columbia's male students and male alumni are not interested in or lack the educational ability for Men's Studies wrongly justifies sex-based discrimination with archaic and overbroad generalizations about men.

92. Columbia, IRWG, and Continuing Education have so extensively propagated the doctrine of Feminism from the Women's Studies program throughout the University's activities that any opposing voice is quickly and summarily silenced.

93. Women's Studies programs are today the varsity sport of choice for females at Columbia in their never-ending war against men.

94. If Title IX can require universities receiving federal financial assistance to provide a female athletics program, then it surely can require Columbia to provide a Men's Studies program.

95. Male athletic programs are geared primarily toward benefiting men while Women's Studies programs are geared primarily toward benefiting females with Feminist ideology, strategy, tactics and training for exploiting the modern-day social bias against men.

---

[1] All the quotations in this paragraph are taken from the website of Columbia's IRWG.

96. The Women's Studies program at Columbia gives female students and female alumni an exclusive opportunity over their male competitors in the University and society by using federal resources to provide females with a golf-like handicap that applies to life in modern-day America.

97. Without a Men's Studies program, Columbia male students and male alumni are disadvantaged in competing with females on America's current uneven playing field of life.

98. There is no substantial proportionality between the ratios of the number of females in the Women's Studies program and the ratio of males in a Men's Studies program because Columbia has no such team of teachers, courses, activities and benefits for male students and male alumni.

99. On information and belief, the disproportionately high number of females in the Women's Studies program evinces the discriminatory impact on men, which Columbia has failed to address.

100. Once Columbia, IRWG, and Continuing Education chose to provide educational opportunities inuring to the benefit of its female students and female alumni, they were then required to provide equal educational opportunities for male students and male alumni so as to balance the dissimilar impact of Women's Studies on males and females.

101. Columbia, IRWG, and Continuing Education's provision of Women's Studies results in disparities of a substantial and unjustified nature in the benefits, treatment, services and opportunities granted females and males with the males receiving disproportionately less. For example, Columbia provides disproportionately more financial assistance for the propagation of Feminism, which disadvantages men, than for contrary pedagogies.

102. On information and belief, IRWG provides disproportionately more assistance in making employment opportunities available to female students than males in violation of 34 C.F.R. 106.38.

103. The discriminatory impact of the Women's Studies program is not counter-balanced by an exceedingly persuasive justification. The assertion that American females are disadvantaged is nothing more than a "big lie" strategy. For example:

   a. Females earn more per unit of time worked than males. The average man spends 44% more time working or doing work related activities than the average woman, U.S. Department of Labor, Bureau of Labor Statistics, Time Use Survey 2007, Table A-1, and the average woman makes 77% that of the average man. If the two were paid equally for their time actually worked, then the pay for the average woman should be 69.5% that of the average man—not 77%.
   b. Females working part-time earn 115% of what part-time male workers. Denise Venable, The Wage Gap Myth, National Center for Policy Analysis, April 12, 2002.

12

c. Females control over a majority of the assets in America. *See* Lucie Schmidt and Purvi Sevak, Gender, Marriage and Asset Accumulation in the United States, University of Michigan, 2005.
d. Females make 80% of the purchases in America. Marc Rudov, Why Women Don't Negotiate, 2007.
e. The 25 most dangerous occupations in America are 90% occupied by men.
f. Males are 20 times more likely to be killed or injured on the job.
g. Over all occupations, men suffer 92% of the job related deaths while making up 54% of the work force. US Department of Labor, Bureau of Labor Statistics, Current Population Survey, Employment and fatalities, by gender of worker, 2006.
h. Since 1973, abortion has allowed females to murder over 40 million incipient human beings, Center for Disease Control, Abortion Surveillance—U.S. 2004, Table 2, often as a means of birth control.
i. Females, but not men, have various excuses that permit them to significantly lessen their punishment for murdering their newborns (Postpartum Depression), their husbands or boyfriends (Battered Spouse Syndrome or Paroxysmal Insanity), and even their children for which society often blames the husband.
j. Females are generally not punished for perjury in family actions, sexual harassment, rape cases or paternity suits.
k. In some jurisdictions, the husband of the mother of a child born during the marriage will be responsible for child support even though the wife cheated on the husband and conceived with another man and DNA evidence can prove such.
l. Wives receive child custody ten times more often than men, Geoffrey P. Miller, Being There, N.Y.U. School Law, Public Law and Legal Theory Research Paper Series, No. 22, July 2000, p. 11, n. 17, while initiating 70% of the divorces, Marc Rudov, Why Women Don't Negotiate, 2007.
m. Debtor prisons for nonpayment of child support incarcerate mainly men.
n. Males generally receive more prison time than females for any crime.
o. The life expectancy for females in America is five years longer than males.
p. Breast cancer kills around 41,000 females a year and prostate cancer 27,000 males, yet there is twice as much Federal money dedicated to breast cancer than prostate cancer, and there are seven breast cancer drugs for every one prostate cancer drug. Catherine Arnst, A Gender Gap in Cancer, Business Week, June 13, 2007.
q. The United States has an office dedicated to women's health while there is not one for men.
r. Nearly every boy born in America has one of the most sensitive parts of his genitalia removed at an age when he cannot object and without anesthesia.
s. Social Security, Medicare, Medicaid, and welfare programs are paid for mostly by male taxpayers, and all have a majority of female beneficiaries.
t. Over 52,000 American service men died in Vietnam but only eight women.
u. Females still do not have to register for the draft.
v. Females make up 57% of the nation's college students but just over 51% of the population.
w. Nightclubs often allow ladies in for free or a fraction of what they charge men, which over time adds up to a significant transfer of wealth from males to females.

104. The actual aim of Women's Studies is not affirmative action but to create and perpetuate a legal, social and economic substratum occupied by men toiling in a Fritz Lang "Metropolis" like underworld.

105. By offering only Women's Studies, Columbia, IRWG and Continuing Education denigrate and disadvantage men, effect artificial restraints on the individual opportunities for men, and fail to advance the full development of the talents and capacities of this nation's men.

## VI. Discrimination under N.Y. Civil Rights Law § 40-c

106. N.Y. Civil Rights Law § 40-c states that "[n]o person shall, because of … sex … be subjected to any discrimination in his … civil rights … by any … corporation or institution, or by the state or any agency … of the state. § 40-c bars discrimination by direct or indirect means.

107. The legislative intent behind § 40-c was to fulfill the State's responsibility of assuring that every individual in New York is afforded equal opportunity to enjoy a full and productive life and that failure to provide such equal opportunity whether because of discrimination, prejudice, intolerance or inadequate education or training not only threatens the rights of New York inhabitants but menaces the institutions and foundations of a free democratic state. N.Y. Civil Rights Law § 40-c, Historical and Statutory Notes.

108. Columbia University is a private educational institution of higher learning organized and existing under the laws of the State of New York.

109. By discriminating against male students and male alumni with its Women's Studies program, Columbia, IRWG and Continuing Education violate N.Y. Civil Rights Law § 40-c.

110. The Regents, Chancellor, Commissioner and President of HESC in their official capacities constitute agencies of the State of New York.

111. By discriminating against male students and male alumni in approving, assisting and aiding Women's Studies at Columbia, the Regents, Chancellor, Commissioner and President of HESC violate N.Y. Civil Rights Law § 40-c.

## VII. Injury

112. By singling out for special benefits the religion of Feminism propagated by the Women's Studies program at Columbia University, the Federal and State defendants create a governmental sectarian preference that infringes an unalienable right of the plaintiff class members.

113. "The Religion … of every man must be left to the conviction and conscience of every man; and it is the right of every man to exercise it as these may dictate. This right is in its nature an unalienable right." Memorial and Remonstrance Against Religious Assessments,

14

as reproduced in the Appendix to the dissenting opinion of Rutledge, J., in <u>Everson v. Board of Education</u>, 330 U.S. 1, 63 (2 The Writings of James Madison 183-191 (G. Hunt ed. 1901)).

114. "The Rulers [Federal and State defendants] who are guilty of … encroachment [on that right] exceed the commission from which they derive their authority, and are Tyrants. The People who submit to it are governed by laws made neither by themselves, nor by an authority derived from them, and are slaves." <u>Id.</u>

115. The conduct of all the defendants in promoting only Women's Studies effectively denies the members of the plaintiff class the opportunity to take Men's Studies courses that will prepare and assist them for dealing with, defending against, and fighting the anti-male climate that is pervasive in America today.

116. Because of the defendants' policies and practices in advocating and furthering Feminism and training Feminist "storm-troopers" through the Women's Studies program at Columbia, the plaintiffs face obstacles to educational access and career opportunities solely as the result of an accident of nature that made them men.

117. The defendants' contribution to the establishment and continuation of Feminism as the primary belief system in this society impairs the plaintiffs' rights to fair treatment in employment, business, politics, the courts, the media, by the police, and before executive government agencies.

118. The defendants' advocacy and furthering of Feminism and training of Feminists derogates males while propagandizing the superiority of females with a harm similar, although not yet as egregious, as the Nazification of universities in Germany during the 1930s when education demonized the Jews while demanding genuflection to an Aryan throne.

## VIII.  Plaintiffs' Class

119. There are questions of law and fact presented in this action that are common to the entire class and that affect the rights of the class.

120. This class action is maintainable under Fed. R. Civ. P. § 23(b)(2) because the defendants have acted on grounds generally applicable to the class, thereby making declaratory and injunctive relief and nominal damages appropriate to the class as a whole.

121. The putative class in this action consists of all males who were students, full or part time, or alumni of Columbia University at some point in time during the three years prior to the filing of this action or all males who currently maintain the status of student or alumni, or all males who will in the future acquire the status of student or alumni.

122. The exact number of members of the class is not known, but it is estimated to be too large for joinder of all members to be practical.

123. The Federal and State defendants are responsible for aiding the establishment of a religion—Feminism—at Columbia University and giving that religion their official imprimatur in violation of the class members' liberty interests by *de facto* forcing them to conform to the establishment of Feminism or keep silent.

124. All the defendants violate the equal protection rights of the plaintiff class members secured under the 5th and 14th Amendments to the U.S. Constitution.

125. Defendants Columbia, IRWG and Continuing Education violate Title IX to the Education Amendments of 1972 by denying benefits and unjustifiably discriminating against the plaintiff class members.

126. Defendants Regents, Chancellor, Commissioner, President of HESC, Columbia, IRWG and Continuing Education discriminate against the class members in violation of N.Y. Civil Rights Law § 40-c.

127. Roy Den Hollander, the named plaintiff and resident of New York County, is an alumnus of Columbia University's Graduate School of Business.

128. As an alumnus, Mr. Den Hollander may take courses in Continuing Education's auditing program, prepare for further graduate work through its Post Baccalaureate Studies or pursue undergraduate studies through the School of General Studies, which offers the same courses with the same teachers as other Columbia undergraduate programs.

129. Mr. Den Hollander explored these avenues for studying and benefiting from Men's Studies in the Fall of 2007 but found there were no such opportunities because Columbia's discriminatory practices only allow for a Women's Studies program.

130. Mr. Den Hollander was denied a public benefit comparable to the public benefit offered female alumni and female students of Columbia.

131. The lack of a Men's Studies program also prevents Mr. Den Hollander and other male alumni and male students from securing the same educational, career, and networking advantages that female alumni and female students can from the Women's Studies program.

## IX.  Relief Sought

132. This Court declare that the aid and assistance provided by the Federal and State defendants for promoting and advocating Feminism and for training Feminists in the Women's Studies program at Columbia violate the establishment clause of the 1st Amendment.

133. Enjoin the Federal and State defendants from providing any further aid and assistance for promoting and advocating Feminism and for training Feminists in the Women's Studies

program at Columbia because such practices violate the establishment clause of the 1st Amendment.

134. Declare that the furnishing of aid and assistance by the Federal and State defendants to the Women's Studies program at Columbia invidiously discriminates against the plaintiffs based on sex.

135. Enjoin the Federal and State defendants from providing any further aid and assistance for the Women's Studies program at Columbia because it violates the equal protection rights of the plaintiffs.

136. Declare that the Women's Studies program at Columbia discriminates against the plaintiffs based on sex.

137. Enjoin Columbia, IRWG and Continuing Education from offering to students and alumni any of the Women's Studies program curriculum, activities or benefits unless an equivalent Men's Studies program focusing on concerns important to men is established by Columbia.

138. Level the playing field by either instituting Men's Studies or eliminating Women's Studies at Columbia University, which will assure that male students and male alumni are no longer at a disadvantage when competing with female students and female alumni for the benefits of society nor at a disadvantage of ending up with the worst of society's burdens.

139. Award nominal damages in the amount of one dollar to the class of plaintiffs and any other relief the Court deems proper.

## Subject Matter Jurisdiction

140. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331 because this action raises federal questions under the 5th and 14th Amendments to the U.S. Constitution and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq.

141. This Court has supplemental jurisdiction under 28 U.S.C. 1367(a) over the State cause of action, N.Y. Civil Rights § 40-c, for civil rights violations by defendants Columbia University, IRWG, Continuing Education, Regents, Chancellor, Commissioner and President of HESC.

## Personal Jurisdiction

142. This Court has personal jurisdiction over the defendants in accordance with Fed. R. Civ. P. 4(e)(2)(C), 4(h)(1)(B), 4(i)(2), 4(j)(2)(B) and N.Y. C.P.L.R. § 307(1) & (2)(1).

## Venue

143. This Court has venue under 28 U.S.C. 1391(b)(3) & (e)(3) and under N.Y. Civil Rights Law § 40-d.

**Conclusion**

144.    There are numerous problems of national importance that lie under the surface of this litigation in which the plaintiffs have made an initial move to compel colleges and universities to change policies having extensive implications for society at large.

145.    University and college Women's Studies programs are busy across the land spreading prejudice and fostering animosity and distrust toward men with the result of the wholesale violation of men's rights due to ignorance, falsehoods and malice.


Dated: August 18, 2008
       New York, N.Y.

                                        /S/
                                        _____
                                        Roy Den Hollander, Esq. (1957)
                                        Class attorney and representative
                                        545 East 14 Street, 10D
                                        New York, N.Y. 10009
                                        (917) 687-0652