UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROY DEN HOLLANDER, on behalf of himself and all
others similarly situated,

                     Plaintiff,

                  v.

INSTITUTE FOR RESEARCH ON WOMEN &
GENDER AT COLUMBIA UNIVERSITY; SCHOOL
OF CONTINUING EDUCATION AT COLUMBIA
UNIVERSITY; TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK; U.S.
DEPARTMENT OF EDUCATION; MARGARET
SPELLINGS, U.S. SECRETARY OF EDUCATION in
her official capacity; CHANCELLOR OF THE BOARD
OF REGENTS, ROBERT M. BENNETT, in his official
capacity; NEW YORK STATE COMMISSIONER OF
THE DEPARTMENT OF EDUCATION, RICHARD P.
MILLS, in his official and individual capacity;
PRESIDENT OF THE NEW YORK STATE HIGHER
EDUCATION SERVICES CORP., JAMES C. ROSS, in
his official and individual capacity,

                     Defendants.

08 Civ. 7286 (LAK) (KNF)

ECF Case

---

## MEMORANDUM OF LAW IN SUPPORT OF THE
## FEDERAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the U.S. Department of Education and
   Margaret Spellings, Secretary of Education
86 Chambers Street, 3rd Floor
New York, New York 10007

JEAN-DAVID BARNEA
Assistant United States Attorney
     Of Counsel

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Standard for a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    The Federal Defendants' Financial Assistance to Students Enrolled in Courses
          at the Institute Does Not Violate the Establishment Clause . . . . . . . . . . . . . . . . . 5

    III.   Plaintiff's Due Process Claim Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . 10

          A.     Plaintiff Does Not Have Standing to Assert a Due Process
                  Claim Against the Federal Defendants Based on the Student-Aid
                  Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          B.     The Student-Aid Programs Do Not Violate Due Process Because
                  Plaintiff Can Point to No Purposeful Government Discrimination . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

## TABLE OF AUTHORITIES

**PAGE**

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Buyers & Renters United to Save Harlem v. Pinnacle Group N.Y. LLC*,
    __ F. Supp. 2d __, 2008 WL 4177943 (S.D.N.Y 2008) . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Collier v. Barnhart*,
    473 F.3d 444 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Committee for Public Education & Religious Liberty v. Nyquist*,
    413 U.S. 756 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Frasier v. Gen. Elec. Co.*,
    930 F.2d 1004, (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gettman v. Drug Enforcement Admin.*,
    290 F.3d 430, (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grimes ex rel. Grimes v. Sobol*,
    832 F. Supp. 704 (S.D.N.Y. 1993), *aff'd*, 37 F.3d 857 (2d Cir. 1994) . . . . . . . . 13, 14, 15

*Heckler v. Mathews*,
    465 U.S. 728 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Immediato v. Rye Neck Sch. Dist.*,
    73 F.3d 454 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jones v. Astrue*,
    526 F. Supp. 2d 455 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lujan v, Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Minn. Fed. of Teachers v. Randall*,
    891 F.2d 1354 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Personnel Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch.,*
    478 F.3d 494 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Raiser v. United States,*
    325 F.3d 1182 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Meyers,*
    95 F.3d 1475 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Valley Forge Christian Coll v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Weinberger v. Wiesenfeld,*
    420 U.S. 636 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Witters v. Wash. Dep't of Servs. for the Blind,*
    474 U.S. 481 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zelman v. Simmons-Harris,*
    536 U.S. 639 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

## FEDERAL STATUTES AND RULES

Higher Education Act, 20 U.S.C. § 1001 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    20 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 14

    20 U.S.C. § 1070a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    20 U.S.C. § 1070b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    20 U.S.C. § 1071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    20 U.S.C. § 1087a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    20 U.S.C. § 1087aa . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    20 U.S.C. § 3403(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iii

42 U.S.C. § 2751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

The U.S. Department of Education (the "Department"), and Margaret Spellings, Secretary of Education (collectively, the "Federal Defendants"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the complaint of Plaintiff Roy Den Hollander ("Plaintiff") as against them, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff, who is proceeding *pro se*, seeks injunctive and declaratory relief to prevent the Federal Defendants from providing funds that benefit Columbia University, its Institute for Research on Women & Gender (the "Institute") and its School of Continuing Education (collectively, "Columbia"), including student aid and loans. His complaint proceeds on two theories: (1) that the Institute espouses a "religious" ideology in that its teachings are infused with the philosophy of "Feminism," in supposed violation of the Establishment Clause of the First Amendment; and (2) that Columbia and the Institute discriminate on the basis of gender because their teachings "demonize[] men and exalt[] women," and because they do not have a "Men's Studies" department offering "courses providing contrary perspectives," in supposed violation of the Due Process Clause of the Fifth Amendment. Plaintiff's claims against the Federal Defendants are predicated upon their provision of financial assistance to students attending eligible post-secondary institutions, including Columbia, regardless of their course of study at such institutions.

Both of Plaintiff's constitutional arguments are so plainly without merit that this Court should dismiss the lawsuit. Plaintiff's First Amendment argument is foreclosed by Establishment Clause jurisprudence under which it is constitutional for a government program to

offer public financial assistance to students to defray the cost of their education, even if some of the students use the funds to pursue religious studies or study at a religious institution. Furthermore, Plaintiff's allegations are insufficient to establish that "Feminism" is a religion for the purposes of the First Amendment. As for Plaintiff's Fifth Amendment claim against the Federal Defendants, he does not have standing to assert it because he cannot point to any cognizable harm he has suffered as a result of the existence of the financial-assistance programs at issue; thus, the Court lacks subject matter jurisdiction over his claim. In any event, Plaintiff's due process claim fails because his complaint does not allege sufficient facts to show that these programs, or the manner in which they are administered by the Federal Defendants, discriminate on the basis of gender.

## BACKGROUND

Columbia is an eligible institution under the Higher Education Act ("HEA"), as amended, 20 U.S.C. § 1001 *et seq.*, and, as such, participates in the federal student financial assistance programs authorized by the HEA. *See id.* § 1001(a)(5) (colleges or universities are eligible if they are "accredited by a nationally recognized accrediting agency or association"). Pursuant to its authority under the HEA, the Federal Defendants administer a variety of loan and grant programs to provide assistance to students pursuing post-secondary undergraduate and graduate degrees at eligible institutions. These programs are available to students at Columbia, including those students enrolled in courses or degree programs at the Institute. The programs include: (a) student loan programs, including the Federal Family Education Loan Program, *id.* § 1071 *et seq.*, and the William D. Ford Federal Direct Loan Program, *id.* § 1087a *et seq.*; (b) campus-based programs, administered directly by individual schools' financial aid offices, including

2

Federal Supplemental Educational Opportunity Grants, *id.* § 1070b *et seq.*, Federal Perkins Loan

programs, *id.* § 1087aa *et seq.*, and Federal Work-Study, 42 U.S.C. § 2751 *et seq.*; and (c) grant

programs, such as the Federal Pell Grant Program, 20 U.S.C. § 1070a *et seq.* (collectively

referred to herein as the "student-aid programs").

 The complaint does not allege that the Federal Defendants provide any direct funding to

the Institute.  *See* Complaint ("Compl.") ¶¶ 21-27.

 Plaintiff's Establishment Clause claim is predicated on his view that Columbia and the

Institute "propagate[] Feminism" in their course offerings, *id.* ¶ 2, which is a "modern-day

religion," *id.* ¶ 4.  The "religion" of "Feminism," Plaintiff alleges, is not "theistic in nature" but

rather "stem[s] from moral, ethical or even malevolent tenets that are held with the strength of

traditional religious convictions," *id.* ¶ 3, and its "tenets" include "historical revisionism,

propagandizing, unanimity of thought labeled 'politically correct,' a pantheon of idols such as

Mary Wollstonecraft, [and] *de facto* disciples and apostles," *id.* ¶ 4.  Plaintiff alleges that the

Federal Defendants "provide[] financial assistance to Columbia University that benefits the

Women's Studies program provided by [the Institute]," through the student-aid programs

described above.  *Id.* ¶¶ 21-27.  This assistance violates the First Amendment, according to the

complaint, because the Federal Defendants' provision of "support and approval, directly and

indirectly for the propagating of the modern-day religion of Feminism through Women's Studies

at Columbia University" violates the constitutional proscription against the Government

"favor[ing] any sect . . . or adopt[ing] programs or practices which aid any religion."  *Id.* ¶ 28.

 Plaintiff's Due Process Clause claim arises out of Columbia's alleged "discriminat[ion]

on the basis of sex against men by advocating, teaching and providing training in Feminist

doctrine and the application of that doctrine in order to impose a unitary belief system of

Feminist orthodoxy that dictates the speech and conduct of members of the University at large."

*Id.* ¶ 29. Plaintiff claims that Columbia's teachings "demonize[] men and exalt[] women in order

to justify discrimination against men based on collective guilt," *id.* ¶ 33: that men are "depict[ed]

. . . as the primary cause for most, if not all, the world's ills throughout history," while

"[f]emales" are "credited with inherent goodness who are oppressed and colonized by men," *id.*

30. Plaintiff further asserts that Columbia "do[es] not balance the Feminist doctrine and dogma

with a masculine curriculum or program," *id.* ¶ 34, and thus men, who would be "the ones most

likely to take courses providing contrary perspectives to the Feminist Women's Studies program,

have no opportunity" to enroll in such courses, *id.* ¶ 40, and are therefore "denied an opportunity

for education" "based on their sex," *id.* ¶ 42. The Federal Defendants are implicated, according

to the Complaint, because they "knowingly assist the discrimination against men by providing

financial funds to Columbia . . . either directly or indirectly," *id.* ¶ 56, which violates the "equal

protection clause of the 5th Amendment," *id.* ¶ 57.

## ARGUMENT

### I.   STANDARD FOR A MOTION TO DISMISS

"'In ruling on a motion to dismiss for failure to state a claim upon which relief may be

granted, the court is required to accept the material facts alleged in the complaint as true.'"

*Buyers & Renters United to Save Harlem v. Pinnacle Group N.Y. LLC*, __ F. Supp. 2d __, 2008

WL 4177943, at *6 (S.D.N.Y. 2008) (quoting *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d

Cir. 1991)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks, citations, and alterations omitted). "Indeed, a plaintiff must assert 'enough facts to state a claim to relief that is plausible on its face.'" *Buyers & Renters*, 2008 WL 4177943, at *6 (quoting *Twombly*, 127 S. Ct. at 1974). "This 'plausibility standard' is a flexible one, 'oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.'" *Id.* (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)) (alteration in original).

A motion to dismiss a complaint for lack of the plaintiff's standing is generally brought under Federal Rule of Civil Procedure 12(b)(1). *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 377-78 (S.D.N.Y. 2002). "As the party seeking to invoke the subject matter jurisdiction of the district court, the plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in the case." *Jones v. Astrue*, 526 F. Supp. 2d 455, 458-59 (S.D.N.Y. 2007) (citations and internal quotation marks omitted). "In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts need not accept as true contested jurisdictional allegations[;] [r]ather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings." *Id.* at 458 (citation and internal quotation marks omitted).

## II.    THE FEDERAL DEFENDANTS' FINANCIAL ASSISTANCE TO STUDENTS ENROLLED IN COURSES AT THE INSTITUTE DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE

"The Establishment Clause of the First Amendment … prevents [the Government] from enacting laws that have the 'purpose' or 'effect' of advancing or inhibiting religion." *Zelman v.*

5

*Simmons-Harris*, 536 U.S. 639, 648 (2002).  Plaintiff does not allege, nor is there any suggestion in the complaint, that Congress enacted the student-aid programs for a religious "purpose." "Thus, the [only] question … is whether [these] program[s] nonetheless ha[ve] the forbidden 'effect' of advancing or inhibiting religion."  *Id.*  Plaintiff's complaint suggests that he believes the forbidden effect at issue is the Federal Defendants' "providing support and approval, directly and indirectly, for the propagating of the modern-day religion of Feminism through Women's Studies at Columbia University."  Compl. ¶ 28.

Plaintiff fails to state a claim under the Establishment Clause for three reasons: (1) he has not alleged that the Institute or the courses he is objecting to are funded directly by the Federal Defendants under any particular grant or program; (2) the student-aid programs at issue do not "advance religion" for Establishment Clause purposes; they simply provide students with funds they may use to pursue any course of study at a participating institution, whether in a religious field or a non-religious field, and (3) "Feminism" is not a religion for the purposes of the First Amendment.

First, Plaintiff fails to allege any direct link between the Federal Defendants' administration of the student aid programs and the Institute or the courses to which he is objecting, or any other direct funding of the programs he is objecting to by the Federal Defendants.  For example, Plaintiff does not allege that the Federal Defendants have provided funds to Columbia or the Institute under a specific grant for the purpose of implementing the allegedly objectionable programs.  Thus, Plaintiff has made no claim that the Federal Defendants are directly funding a religious activity.

6

Second, the Establishment Clause does not prohibit the Government from providing funds to individuals who choose to use the funds to pursue religious education.  In the context of government funding for education, there is a material constitutional difference between, on the one hand, "government programs that provide aid directly to religious schools," and, on the other hand, "programs of true private choice, in which government aid reaches religious schools only as a result of the genuine and independent choices of private individuals."  *Zelman*, 536 U.S. at 649.  An example of the former type of program was the one declared unconstitutional by the U.S. Supreme Court in *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756 (1973).  In that case, the State of New York had enacted a law that provided direct money grants and tax benefits to private religious schools in an amount "unrelated to the amount of money actually expended by any parent on tuition," and further offered parents tuition reimbursements that gave them "an incentive … to send their children to sectarian schools."  *Id.* at 762-64, 786, 790.

By contrast, "where a government aid program is neutral with respect to religion, and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice, the program is not readily subject to challenge under the Establishment Clause."  *Zelman*, 536 U.S. at 652.  This type of program is exemplified by the program approved by the Court in the *Zelman* case: an Ohio school-voucher program that gives parents a voucher worth a certain dollar amount per student, which can be used toward tuition costs at any local private school, whether religious or non-religious.  536 U.S. at 645-47; *see also Witters v. Wash. Dep't of Servs. for the*

*Blind*, 474 U.S. 481 (1986) (state vocational-assistance program for the blind constitutionally permitted a recipient to use funds to study at a religious college).

The student-aid programs at issue in this suit fall squarely on the permissible side of the *Zelman* rubric. These HEA programs are available to nearly every student at an eligible college or university, public or private, religious or non-religious, in the United States. *See generally* 20 U.S.C. § 1001 (providing eligibility criteria for participating colleges and universities). Thus, even if the Institute did offer "religious" courses, there would be nothing unconstitutional about programs supporting students' individual decisions to enroll in such courses using funds provided by the Federal Defendants. Indeed, there is no statutory or administrative prohibition against students using federal funds to finance their education in explicitly religious courses of study, such as divinity or religious studies.

As for whether the Institute's courses are "religious," despite the complaint's suggestion to the contrary, the Establishment Clause "does indeed distinguish between religious [philosophies] and secular [philosophies]." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 462 (2d Cir. 1996) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972)). While the complaint asserts that "[a] belief system need not be theistic in nature to be a religion but rather can stem from moral, ethical or even malevolent tenets that are held with the strength of traditional religious convictions," Compl. ¶ 3, not every "belief system," no matter how strongly held, is a religion for constitutional purposes. Even accepting Plaintiff's somewhat bizarre characterization of the nature of "Feminis[t]" beliefs, *id.* ¶ 4 ("historical revisionism, propagandizing, unanimity of thought labeled 'politically correct,' a pantheon of idols such as

8

Mary Wollstonecraft, *de facto* disciples and apostles"), it is clear that these do not make "Feminism" into a religion.

In *Wisconsin v. Yoder*, the Supreme Court considered the objections of the Amish community to schooling their children beyond the eighth grade and, in the process, considered the nature of the Amish objection to state law mandating some compulsory high-school education. 405 U.S. at 215. The Court upheld the constitutionality of the Amish objection to secondary education only because it concluded this objection was an inextricable part of their religious views, adding by way of contrast that "a way of life, however virtuous and admirable" does not implicate the Establishment Clause "if it is based on purely secular considerations." *Id.* In contrast, the Second Circuit has held that local parents were not entitled to exempt their children from their school's mandatory community-service program because the basis of their objection to the program, though deeply held, was "secular," and not religious. *Immediato*, 73 F.3d at 461-62.

While there is no bright line separating religious from secular belief systems, courts have laid out relevant criteria for distinguishing the two, including that religious beliefs are generally characterized by, *inter alia*, "ultimate ideas," "metaphysical beliefs," a "moral or ethical system," and the "accoutrements of religion." *See United States v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996). Regardless of the criteria used, even the most charitable reading of Plaintiff's complaint does not establish that "Feminism" is a religious belief, as opposed to a secular philosophy. Accordingly, the Establishment Clause does not restrict government practices which either advance or inhibit this area of study. Thus, even if the Establishment Clause prohibited the Government from providing funds to individuals who choose to use the funds to

pursue religious education — which it conclusively does not — the use of student-aid program funds to pursue a study of "Feminism," as alleged by the complaint, would not run afoul of the First Amendment.

### III.     PLAINTIFF'S DUE PROCESS CLAIM SHOULD BE DISMISSED

#### A.     Plaintiff Does Not Have Standing to Assert a Due Process Claim Against the Federal Defendants Based on the Student-Aid Programs

"[T]he irreducible constitutional minimum of standing contains three elements: (1) there must be an injury in fact, — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch.*, 478 F.3d 494, 498 (2d Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted).  The party invoking a court's jurisdiction bears the burden of establishing standing.  *See Lujan*, 504 U.S. at 561.  Where that party does not establish standing to bring a claim, the court must dismiss the claim for lack of subject matter jurisdiction.  *See, e.g.*, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 475-76 (1982).

Plaintiff's complaint fails at the first of these requirements:  It does not specify what "concrete and particularized" injury Plaintiff has suffered as a result of the operation of the student-aid programs, nor is one apparent from the complaint.  The complaint does not allege that Plaintiff has applied for or failed to receive assistance under any of these programs.  It further does not allege that Plaintiff wishes to enroll in a course of his choosing but cannot do so

because he is not eligible for support through the student-aid programs for such a course.  And it does not specify any constitutionally cognizable harm Plaintiff has suffered from the manner in which these programs are currently administered.

Instead, the nature of Plaintiff's objection appears to be philosophical or political: he would prefer it if the student-aid programs were not available to Columbia students who choose to enroll in courses or degree programs at the Institute, but he is not directly affected either way; and he would prefer it if Columbia offered additional courses that met with his approval, but he does not allege that the Federal Defendants could be implicated in an individual university's decisions regarding its curriculum.  Yet, opposition to a government program for "philosophical and/or religious reasons [is a] generalized grievance, without any imminent tangible harm, [that] cannot confer standing."  *Raiser v. United States*, 325 F.3d 1182, 1184 (10th Cir. 2002) (opposition to death penalty); *accord Gettman v. Drug Enforcement Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (support for legalization of marijuana); *see also Minn. Fed. of Teachers v. Randall*, 891 F.2d 1354, 1358-59 (8th Cir. 1989) (teachers' union's opposition to law allowing students to take classes at religious colleges was based on "philosophical concerns" to program and thus the union lacked standing).

Plaintiff thus lacks standing to assert a due process claim to the student-aid programs or the manner in which they are administered by the Federal Defendants.  Accordingly, his due process claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

11

**B.** **The Student-Aid Programs Do Not Violate Due Process Because Plaintiff Can Point to No Purposeful Government Discrimination**

Even if Plaintiff had standing to pursue his due process claim against the Federal Defendants, such a claim fails on the merits of the pleadings.  It is well established that the Fifth Amendment's Due Process Clause contains an "equal protection component" that forbids the Federal Government from discriminating on the basis of sex.  *Heckler v. Mathews*, 465 U.S. 728, 730-31 (1984).[1]  That constitutional rule forbids, for example, "statute[s] that classif[y] individuals on the basis of their gender," except in rare circumstances.  *Id.* at 744 (internal quotation marks omitted).

There is, and can be, no claim that the student-aid programs classify individuals according to gender.  "When a statute gender-neutral on its face is challenged on the ground that its effects upon [one gender] are disproportiona[tely] adverse, a twofold inquiry is . . . appropriate.  The first question is whether the statutory classification is . . . indeed neutral in the sense that it is not gender-based.  If the classification itself, covert o[r] overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.  In this second inquiry, impact provides an important starting point, but purposeful discrimination is the condition that offends the Constitution."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979) (citation and internal quotation marks omitted); *accord Collier v. Barnhart*, 473 F.3d 444, 448 (2d Cir. 2007).

---

[1] The "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment," *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975), and thus cases applying either of these constitutional provisions are relied upon herein.

12

Here, the statutes enacting the student-aid programs contain no classifications at all potentially relating to gender, nor does the complaint suggest as much.  Thus, Plaintiff can succeed on his due process claim only if he shows that the student-aid programs, or the manner in which they are administered by the Federal Defendants, "reflect[] invidious gender-based discrimination," and that this discrimination is "purposeful."  This means that even if government conduct has a  disproportionate impact on members of one gender, a successful plaintiff must assert that "the decision maker … selected or reaffirmed a particular course of action at least in part *because of* not merely *in spite of* its adverse effects upon an identifiable group."  *Personnel Adm'r*, 442 U.S. at 279 (emphasis added); *accord Grimes ex rel. Grimes v. Sobol*, 832 F. Supp. 704 (S.D.N.Y. 1993), *aff'd*, 37 F.3d 857 (2d Cir. 1994).  "In alleging a claim . . . based on a constitutional violation, the '[d]iscriminatory purpose' with which a defendant must have acted 'implies more than intent as volition or intent as awareness of the consequences.'"  *Grimes*, 832 F. Supp. at 708 (quoting *Personnel Adm'r*, 442 U.S. at 279).

Even accepting Plaintiff's characterization of the content of the courses offered at the Institute as reflecting "bigotry toward men," Compl. ¶ 32, he does not state a constitutional claim against the Federal Defendants when he alleges that they provide students with the financial opportunity, but not any government mandate, to enroll in such courses if they choose to do so. In enacting the student-aid programs at issue, Congress specifically prohibited the Government from exercising any supervision or control over the content of courses offered at participating institutions of higher education.  20 U.S.C. § 3403(b).  Indeed, the statute requires the Federal Defendants to provide funds to assist students in paying for their education at any college or

university that is "accredited by a nationally recognized accrediting agency or association," *id.*
§ 1001(a)(5), regardless of the course of study they pursue at such an institution.

Plaintiff alleges that the student-aid programs "provide assistance and tangible financial
aid that facilitates, reinforces, and supports discrimination motivated by malice against men at
Columbia," Compl. ¶ 54; that this "result[s] in disparate treatment of men," *id.* ¶ 55; and that the
Federal Defendants take these actions in a manner that "knowingly assist[s] the discrimination
against men," *id.* ¶ 56.  These allegations fall short of those needed to sustain a constitutional
claim.  In particular, although the complaint alleges that the Federal Defendants "know" that
their actions "result in disparate treatment of men," *id.* ¶¶ 55-56, it nowhere alleges that they
administer the student-aid programs in this way specifically "*because of* … its adverse effects"
on men, *Personnel Adm'r*, 442 U.S. at 279 (emphasis added).   That is, Plaintiff has failed to
make "specific allegations of fact necessary to sustain the claim that a discriminatory purpose
was a motivating factor in any actions taken by defendants—that is," that the student-aid
programs were enacted and administered in this way "because of, not merely in spite of, its
allegedly detrimental effects on [men]."  *Grimes*, 832 F. Supp. at 708.

An analogous claim in the race-related context was rejected several years ago in the
*Grimes* case.  There, a group of African-American students charged that the New York City
public school curriculum "distorts and demeans the role of African Americans and excludes the
existence, contributions, and participation of African Americans in various aspects of world and
American culture, sciences, history, arts and other areas of human endeavor," which as a result,
discriminated against these students.  *Id.* at 706 (internal quotation marks omitted).  Although the
school authorities had "implemented a Holocaust Curriculum and an Italian Heritage

Curriculum, but did not adopt a special curriculum to focus on issues of particular importance to African Americans," the district court found that the "Plaintiffs had failed to come forward with the specific allegations of fact necessary to sustain the claim that a discriminatory purpose was a motivating factor in any actions taken by defendants — that is, that the curriculum was adopted because of, not merely in spite of, its allegedly detrimental effects on African American students." *Id.* at 708.

Here, Plaintiff's claims against the Federal Defendants are infinitely more remote. The complaint does not allege that Federal Defendants played any role in creating the curriculum about which Plaintiff is concerned, and the curriculum in question is not part of a mandatory public school offering, but rather comprises elective university courses. The complaint seeks relief from the Federal Defendants merely on the ground that they provide funds by which students can defray part of the cost of attending eligible institutions of higher education, at which they may choose any available course of study. Because Plaintiff does not thus allege sufficient facts to support an inference of intentional discrimination based on gender on the face of the student-aid programs, or in their administration by the Federal Defendants, his Fifth Amendment claim must be dismissed for failure to state a claim.

15

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's complaint against the

Federal Defendants.

Dated:   New York, New York
         October 24, 2008

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the U.S. Department of Education and
                                       Margaret Spellings, Secretary of Education

By:              _____
                                    JEAN-DAVID BARNEA
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York  10007
                                    Tel: (212) 637-2679
                                    Fax: (212) 637-2717
                                    Email:  jean-david.barnea@usdoj.gov