UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROY DEN HOLLANDER and WILLIAM A. NOSAL, on behalf :
of themselves and all others similarly situated,          :
                                                          :
                                         Plaintiffs,      :
                                                          :    08 Civ. 7286
              -against-                                   :    (LAK)(KNF)
                                                          :
INSTITUTE FOR RESEARCH ON WOMEN AND GENDER                :      (ECF)
AT COLUMBIA UNIVERSITY, et al.,                           :
                                                          :
                                         Defendants.      :
------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF STATE DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

ANDREW M. CUOMO
Attorney General of the
  State of New York
*Attorney for Defendants*
120 Broadway - 24th Floor
New York, New York 10271
Tel. No. (212) 416-8634

CLEMENT J. COLUCCI
Assistant Attorney General
 of Counsel

## Table of Contents

**Pages**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    POINT I    -    THE ESTABLISHMENT CLAUSE CLAIMS MUST BE
DISMISSED BECAUSE "FEMINISM" IS NOT A
RELIGION AND THE STATE DEFENDANTS'
ACTIVITIES DO NOT TEND TO ESTABLISH
RELIGION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    "Feminism" is Not a Religion for Establishment Clause Purposes . . . . . . 3

        B.    What the State Defendants Are Alleged to Have Done
Does Not Violate the Establishment Clause Even When
Done Concerning Incontrovertibly Religious Subjects . . . . . . . . . . . . . . . 5

    POINT II    -    PLAINTIFFS FAIL TO ALLEGE ANY CONDUCT OF
THE STATE DEFENDANTS THAT VIOLATES THE
EQUAL PROTECTION CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . 7

    POINT III    -    TITLE IX DOES NOT REGULATE THE CONTENT OF
ACADEMIC PROGRAMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Table of Authorities

**Pages**

### Cases

Altman v. Bedford Cent. Sch. Dist.,
  45 F. Supp. 368 (S.D.N.Y. 1999), aff'd in part, rev'd in part on other grounds,
  245 F.3d 49 (2d Cir. 2001) .................................................. 3, 4

Children First Found., Inc. v. Martinez,
  2007 U.S. Dist. LEXIS 94944 (N.D.N.Y. Dec. 27, 2007) ....................... 3, 4

Grimes v. Sobol,
  832 F. Supp. 704 (S.D.N.Y 1993), aff'd, 37 F.3d 582 (2d Cir. 1994) ............... 8

Malnak v. Yogi,
  592 F.2d 197 (3d Cir. 1979) ...................................................... 3

Mitchell v. Helms,
  530 U.S. 793 (2000) ............................................................. 6

Peloza v. Capistrano Unified Sch. Dist.,
  37 F.3d 517 (9th Cir. 1994) ...................................................... 4

U.S. v. Allen,
  760 F.2d 447 (2d Cir. 1985) .................................................. 3, 4

U.S. v. Meyers,
  906 F. Supp. 1494 (D. Wyo. 1995) ................................................ 4

Witters v. Washington Dep't of Serv. for the Blind,
  474 U.S. 481 (1986) ............................................................. 6

### Federal Constitution

First Amendment, ................................................................ 1, 3
  Establishment Clause .......................................................... passim

Fourteenth Amendment, ............................................................... 1
  Equal Protection Clause ..................................................... 1, 2, 7, 8

# Table of Authorities

**Pages**

### Federal Statutes, Regulations and Rules

**Federal Statutes**

20 U.S.C. § 1681, et seq., Education Amendments of 1972 ("Title IX") .............. *passim*

**Federal Regulations**
34 C.F.R.
  § 106.42 ................................................................. 9

**Federal Rules of Civil Procedure**
  12(b)
    12(b)(1) .................................................................. 1
    12(b)(6) ................................................................ 1, 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROY DEN HOLLANDER and WILLIAM A. NOSAL, on behalf :
of themselves and all others similarly situated,  :
                                                  :
                           Plaintiffs,            :
                                                  :         08 Civ. 7286
             -against-                            :         (LAK)(KNF)
                                                  :
INSTITUTE FOR RESEARCH ON WOMEN AND GENDER        :         (ECF)
AT COLUMBIA UNIVERSITY, et al.,                   :
                                                  :
                           Defendants.            :
------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants the Board of Regents of the University of the State of New York ("Regents") and its Chancellor, Robert M. Bennett; Richard P. Mills, Commissioner of the New York State Education Department ("SED"); and James C. Ross, President of the New York State Higher Education Services Corporation ("HESC") (collectively, "State Defendants"), by their attorney, ANDREW M. CUOMO, Attorney General of the State of New York, submit this reply memorandum of law in further support of their motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

As demonstrated in State Defendants' moving brief ("State Def. Mem."), based upon well-established legal principles, plaintiffs' claims are jurisdictionally and substantively flawed and must be dismissed. Plaintiffs' response ("Pl. Mem.") to the State Defendants' motion to dismiss the complaint, which asserts claims under the First Amendment Establishment Clause, the Fourteenth Amendment Equal Protection Clause, and Title IX of the Education Amendments

of 1972, 20 U.S.C. § 1681, et seq., is notable less for what it says than for what it pointedly declines to address. Specifically, plaintiffs' opposition ignores binding authority addressed in State Defendants' moving brief that is directly on point and fatal to plaintiffs' claims. Instead, plaintiffs propound conclusory assertions of constitutional violations while failing to identify what they believe the State Defendants have done, or not done, in specific enough terms to measure their alleged action or inaction against relevant legal standards. Ultimately, plaintiffs' real complaint is that they disapprove of women's studies programs and want the defendants, including the State Defendants, to approve, or promote, or create from whole cloth, academic programs they might prefer – or, in the alternative, to get rid of women's studies programs all together. Because neither the Establishment Clause, nor the Equal Protection Clause, nor Title IX of the Civil Rights Act gives plaintiffs any legal basis for such relief, their claims must be dismissed.

## ARGUMENT

### POINT I

### THE ESTABLISHMENT CLAUSE CLAIMS MUST BE DISMISSED BECAUSE "FEMINISM" IS NOT A RELIGION AND THE STATE DEFENDANTS' ACTIVITIES DO NOT TEND TO ESTABLISH RELIGION

As demonstrated in State Defendants' moving brief, plaintiff's Establishment Clause claims must be dismissed because: (1) feminism is not a religion; and (2) what the State Defendants do with regard to women's studies programs is no different from what they do with any other academic program, whether secular or religious, and is lawful whether the program in question is incontrovertibly secular, incontrovertibly religious, or something in between. In opposition, plaintiffs literally ignore binding authority on both points.

### A. "Feminism" is Not a Religion for Establishment Clause Purposes

As the State Defendants previously highlighted, (State Def. Mem., pp. 11-14), the Second Circuit has squarely held two propositions fatal to plaintiffs' Establishment Clause claims. First, the Circuit has rejected the "unitary" view of the First Amendment Religion Clauses, under which "religion" is defined the same way for both Free Exercise and Establishment Clause purposes, and, second, the Circuit has "adopt[ed] for establishment clause purposes the conventional, majority view" of what constitutes a religion. U.S. v. Allen, 760 F.2d 447, 450 (2d Cir. 1985). Plaintiffs nowhere deny that feminism is not a religion according to "the conventional majority view." Nor do they deny that Allen requires adhering to the "conventional, majority view" of religion in Establishment Clause cases. (Pl. Mem., pp. 21-25)

Indeed, plaintiff's do not mention Allen at all. Instead, they suggest that because most of the cases cited by the State Defendants (a group that includes Allen, although plaintiffs decline to mention it by name) were not decided on a motion to dismiss, they cannot be relied upon as guides to the governing legal standard. (Pl. Mem., pp. 21-22)

This argument is simply mistaken. The Second Circuit in Allen announced a rule of law. It did not merely come to a legal conclusion about a specific set of facts, it set forth a general rule to govern future cases, which a court can do in response to a motion to dismiss, a motion for summary judgment, or a trial on the merits. The rule announced in Allen has been recognized as a generally-applicable rule and applied in later cases, even at the pleading stage.[1] See Children

---

[1] Plaintiffs also cite the District Court opinion in Altman v. Bedford Cent. Sch. Dist., 45 F. Supp. 368, 378 (S.D.N.Y. 1999), aff'd in part, rev'd in part on other grounds, 245 F.3d 49 (2d Cir. 2001), which adopted the Third Circuit's unitary and broad definition of religion from Malnak v. Yogi, 592 F.2d 197, 208-10 (3d Cir. 1979) (Adams, J., concurring). (Pl. Mem., pp. 22-23). Plaintiffs' reliance on Altman is misplaced, however, as that case turned not on the definition of religion, but on whether the practices complained of were coercive, or whether they were simply permissible teaching *about* religion, or whether an objective observer would perceive them as endorsing religion. See Altman, 245 F.3d at 76-79.

3

First Found., Inc. v. Martinez, 2007 U.S. Dist. LEXIS 94944, at *30-39 (N.D.N.Y. Dec. 27, 2007) (relying on Allen to deny amendment of pleading as futile); see also U.S. v. Meyers, 906 F. Supp. 1494, 1503, n. 11 (D. Wyo. 1995) (recognizing split between Second Circuit and Third Circuit on whether religion clauses are unitary).

Under the Allen rule, it is possible, contrary to plaintiffs' view, to decide an Establishment Clause case on a 12(b)(6) motion. For example, in Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517 (9th Cir. 1994), a biology teacher claimed that being required to teach about evolution violated the Establishment Clause because "evolution" and "evolutionism" were religions, and requiring that they be taught in the schools violated the Establishment Clause. The District Court dismissed the complaint at the pleading stage on the ground that "evolutionism" is not a religion and the Ninth Circuit affirmed, citing Allen. See Peloza, 37 F.3d at 521.

Very much like plaintiffs in this case, Mr. Peloza had asked the court to "accept his [religious] definition of 'evolution' and 'evolutionism' and impose his definition on the school district as its own, a definition that cannot be found in the dictionary, in the Supreme Court cases, or anywhere in the common understanding of the words." Peloza, 37 F.3d at 521. The court refused: "To say red is green or black is white does not make it so. Nor need we for the purposes of a 12(b)(6) motion accept a made-up definition of 'evolution.' Nowhere does Peloza point to anything that conceivably suggests that the school district accepts anything other than the common definition of 'evolution' and 'evolutionism.'" Id.

In this case, plaintiffs similarly offer a "made-up definition" of feminism. Nowhere do they point to anything suggesting that the State Defendants, or anyone else other than themselves,

---

In any event, circuit court decisions bind district courts, and Allen remains the law in this Circuit. See, e.g., Children First Found., Inc. v. Martinez, 2007 U.S. Dist. LEXIS 94944, at *30-39 (N.D.N.Y. Dec. 27, 2007) (following Allen).

4

"accept[] anything other than the common definition" of feminism. Because under the common definition, and under the "conventional, majority view," feminism is not a religion, plaintiffs' Establishment Clause claims must be dismissed.

**B.    What the State Defendants Are Alleged to Have Done
       Does Not Violate the Establishment Clause Even When
       Done Concerning Incontrovertibly Religious Subjects**

Even assuming that feminism could be deemed a religion, plaintiffs still have failed to allege any conduct (or inactivity) on the part of State Defendants amounting to an unlawful establishment of religion. Plaintiffs do not dispute that whatever the State Defendants do concerning women's studies programs – be it regulating and registering programs, or funding institutions or students – it does not only for women's studies programs, but for all academic programs, from the most obviously secular to the most explicitly religious.[2] (Pl. Mem., pp. 23-24) If plaintiffs think that the State Defendants violate the Establishment Clause by registering programs offering Bachelor of Sacred Music or Doctor of Sacred Theology degrees, or by funding institutions that offer, or aiding students that enroll in, such unquestionably religious programs, they do not say so. But if such activities do not violate the Establishment Clause, then doing the same thing for women's studies programs cannot either.

If, on the other hand, plaintiffs actually do think that registering programs in explicitly religious subjects, or aiding institutions that offer, or students that enroll in, such programs violates the Establishment Clause, but that, for reasons of their own, they focus their attack solely on allegedly religious women's studies programs, they are wrong. Plaintiffs' argument appears to

---

[2]    Plaintiffs do appear to dispute some of the State Defendants' account of what they do, particularly whether registration of academic programs involve oversight of content,(compare Pl. Mem., pp. 23-24 with State Def. Mem., pp. 5-6, 15-16), but they do not seem to contend that the State Defendants oversee women's studies programs, explicitly religious programs, or plainly secular programs differently.

be that it is *per se* unlawful to register or fund academic programs in explicitly religious subjects. (Pl. Mem., pp. 23-25) Plaintiffs admit, however, as they must, that "the type of benefits provided for the instruction of Feminist doctrine are similar to those given mathematics, or other programs," (Pl. Mem., p. 24), and this admission is fatal to their Establishment Clause claims.

As the State Defendants have previously demonstrated, the State's regulatory scheme treats academic programs offering or seeking to offer the 150 different registered degrees, in both religious and non-religious subjects, exactly the same, applying secular, religion-neutral academic standards to determine whether the program should be allowed to commence or continue. (State Def. Mem., pp. 4-6, 14-17) Because such even-handed regulation of *all* academic programs, religious or non-religious, advances an evident secular purpose, neither endorses nor disapproves of religion, and does not entangle the government in religious questions, it raises no Establishment Clause issue. (State Def. Mem., pp. 14-17 and cases cited)

The State's various financial aid schemes likewise present no Establishment Clause issue. HESC's aid, as previously demonstrated, (State Def. Mem., pp. 7, 20-21), goes directly to students, who may use it for either secular or religious education as they themselves see fit. The Supreme Court has squarely held that such direct aid to students passes Establishment Clause scrutiny in <u>Witters v. Washington Dep't of Serv. for the Blind</u>, 474 U.S. 481, 485-89 (1986), another case notable for its absence from plaintiffs' brief. As for Bundy aid, that aid is given on a religion-neutral basis, strictly on the number and type of degrees awarded. (State Def. Mem., pp. 6-7, 17-20) The Supreme Court has squarely upheld this type of aid as well, in <u>Mitchell v. Helms</u>, 530 U.S. 793, 816 (2000) ("If aid to schools, even 'direct aid,' is neutrally available and, before reaching or benefitting any religious school, first passes through the hands (literally or figuratively) of numerous private citizens who are free to direct the aid elsewhere, the

government has not provided any 'support of religion.'"), yet another seminal case notably absent from plaintiffs' brief.[3]

Plaintiffs' Establishment Clause claims, where comprehensible at all, flout direct, binding authority that plaintiffs refuse even to mention. Feminism is not a religion under this Circuit's governing legal standard. And nothing the State does concerning women's studies programs would violate the Establishment Clause even if feminism *were* deemed a religion. Therefore, plaintiff's Establishment Clause claims must be dismissed.

## POINT II

### PLAINTIFFS FAIL TO ALLEGE ANY CONDUCT OF THE STATE DEFENDANTS THAT VIOLATES THE EQUAL PROTECTION CLAUSE

The basic flaw in plaintiffs' Equal Protection claims is that plaintiffs fail to allege any particular conduct by the State Defendants that might violate the Equal Protection Clause. The fundamental Equal Protection problem, as plaintiffs articulate it, is that women's studies programs exist and men's studies programs do not. (Pl. Mem., pp. 12-16; see especially, p. 12 ("As a result of the defendants' policies and practices, educational opportunities are not made available or are made available on an unequal basis or are of less value to the class members because of the existence of a Women's Studies program and the lack of a Men's Studies program.")) But despite vague references to "invidiously discriminatory policies," Id., p. 15, plaintiffs do not identify any act by the State Defendants, or any failure to act, contributing to this alleged problem.

Plaintiffs do not allege, and it is not true, that the State Defendants have wrongfully

---

[3] The quoted language disposes of plaintiffs' argument that Bundy aid is distinguishable from the aid involved in *other* Supreme Court cases plaintiffs do deign to mention, because the aid goes directly to the school that the graduating student attended. (Pl. Mem., p. 24, n. 24.)

7

refused to register any men's studies program. Plaintiffs do not allege, and it is not true, that any men's studies program has applied for registration. Plaintiffs do not allege, and it is not true, that any actually existing men's studies program has been deterred from applying for registration because, owing to the State Defendants' alleged "partiality toward females and enmity toward males," (Pl. Mem., p. 15), any such application would be futile. Plaintiffs do not allege, and it is not true, that any identifiable state law or regulation or policy prevents the development and registration of men's studies programs.

Simply put, the non-existence of registered men's studies programs – or, so far as appears in the complaint, *any* men's studies programs – is not the State Defendants' fault. And the Equal Protection Clause does not impose an affirmative obligation upon the State Defendants to conjure up academic programs, or entire fields of study, merely because an identifiable class of persons might disproportionately benefit from them. See Grimes v. Sobol, 832 F. Supp. 704 (S.D.N.Y 1993) (rejecting claim that failure to provide curriculum giving proper emphasis to historical contributions of Africans and African-Americans violates, *inter alia*, Equal Protection Clause), aff'd, 37 F.3d 582 (2d Cir. 1994). Because nothing in the complaint identifies any discriminatory action or inaction, or policy or practice, of the State Defendants that could be held responsible for the allegedly unequal conditions about which plaintiffs complain, their Equal Protection claims must be dismissed.

## POINT III

## TITLE IX DOES NOT REGULATE THE CONTENT OF ACADEMIC PROGRAMS

The State Defendants heartily agree with plaintiffs on one point: "Title IX does not tell a college what to teach or a state what curriculum to register, just that their educational operations cannot treat one group differently from another based on outmoded stereotypical

characterizations of the sexes." (Pl. Mem., p. 7) If this is true, and both sides agree it is, then Title IX does not require colleges to offer, or direct states to require that colleges offer, any particular mix of courses and programs. As established in State Defendants' moving brief, so long as colleges make available to students of both sexes whatever courses or programs they choose to offer – and no one disputes that male students who wish to take women's studies courses are free to take them – Title IX is satisfied. (State Def. Mem., pp. 24-26) Whether students of one sex or another do not wish to take advantage of what is offered, because they anticipate that they will not like the learning to which they are exposed or will not feel comfortable in the class, is not a problem for which Title IX provides a remedy.[4]

Plaintiffs' response is that they assert a "more subtle variety of discrimination that focuses on the results of the State and Columbia's conduct." (Pl. Mem., p. 7) Plaintiffs' theory, however, still appears to be that Title IX requires the State Defendants and Columbia to provide or promote a men's studies program, even if no such programs exist or have ever sought registration, because plaintiffs, and perhaps other men, might profit from it if it existed, and that the defendants' alleged failure to provide or promote it causes an adverse disparate impact on men. (Pl. Mem., pp. 7-8)

Plaintiffs assert that this allegedly disparate impact on men violates the implementing regulations under Title IX because "allegations alone of disparate impact suffice to establish liability when a suit is brought to enforce Title IX's implementing regulations because that is the

---

[4]     Plaintiffs suggest that Title IX authorizes regulation of course offerings or content because, although 34 C.F.R. § 106.42 forbids regulation of textbooks and course materials, it does not forbid regulating the choice of course offerings itself. (Pl. Opp. Mem., p. 6, n. 6) On plaintiffs' reading, under this regulation the federal government could require a college to teach a certain course -- with government-approved content – but could not forbid the instructor from assigning textbooks and course materials inconsistent with or antagonistic to that government-approved content. Nothing in plaintiffs' brief purports to explain why the Court should adopt such an unnatural reading.

standard under Title VI of the Civil Right [sic] Act on which Title IX is patterned." (Pl. Mem., p. 9) The Title VI-Title IX analogy is unhelpful to plaintiffs, however, because the Supreme Court has explicitly held that private plaintiffs cannot sue to enforce Title VI's disparate-impact regulations. See Alexander v. Sandoval, 532 U.S. 275 (2001) (private plaintiffs cannot sue to enforce Title VI's disparate-impact regulations).

In the absence of any statutory, regulatory, or case authority suggesting that Title IX requires colleges to provide, or directs states to require of colleges, any particular classes or academic programs, plaintiffs' Title IX claims must be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in State Defendants' moving brief, the amended complaint should be dismissed, with prejudice, as against the State Defendants, together with such other relief as the Court deems just and proper.

Dated: New York, New York
      March 20, 2009

                                  ANDREW M. CUOMO
                                  Attorney General of the
                                    State of New York
                                  Attorney for State Defendants
                                  By:

                                      /s/
                                  CLEMENT J. COLUCCI
                                  Assistant Attorney General
                                  120 Broadway
                                  New York, New York 10271
                                  (212) 416-8634
                                  Clement.Colucci@oag.state.ny.us