UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

ROY DEN HOLLANDER and WILLIAM A. NOSAL, :
on behalf of themselves and all others similarly situated, :
:
                    Plaintiffs, :    08 CV 7286 (LAK) (KNF)
:
            - against - :
:    ECF Case
INSTITUTE FOR RESEARCH ON WOMEN AND :
GENDER AT COLUMBIA UNIVERSITY; SCHOOL :
OF CONTINUING EDUCATION AT COLUMBIA :
UNIVERSITY; TRUSTEES OF COLUMBIA :
UNIVERSITY IN THE CITY OF NEW YORK; :
UNITED STATES DEPARTMENT OF EDUCATION; :
MARGARET SPELLINGS, UNITED STATES :
SECRETARY OF EDUCATION, in her official :
capacity; BOARD OF REGENTS OF THE :
UNIVERSITY OF THE STATE OF NEW YORK, in his :
or her official and individual capacity; CHANCELLOR :
OF THE BOARD OF REGENTS, ROBERT M. :
BENNETT, in his official and individual capacity; NEW :
YORK STATE COMMISSIONER OF THE :
DEPARTMENT OF EDUCATION, RICHARD P. :
MILLS, in his official and individual capacity; and :
PRESIDENT OF THE NEW YORK STATE HIGHER :
EDUCATION SERVICES CORPORATION, JAMES :
C. ROSS, in his official and individual capacity, :
:
                    Defendants. :
:
-----------------------------------------------------------------------x

**COLUMBIA DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

                            FRIEDMAN KAPLAN SEILER & ADELMAN LLP
                            1633 Broadway
                            New York, New York  10019
                            (212) 833-1100

                            *Attorneys for Defendants Institute for Research on Women
                            and Gender at Columbia University, School of Continuing
                            Education at Columbia University, and Trustees of
                            Columbia University in the City of New York*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    THE COMPLAINT ALLEGES NO FACTS THAT WOULD SUPPORT A FINDING THAT PLAINTIFFS HAVE STANDING TO SUE OR THAT COLUMBIA HAS DISCRIMINATED AGAINST MEN ........................................................ 2

        A.    Plaintiffs Lack Standing Because They Do Not Allege A Concrete and Particularized Injury ............................................ 2

        B.    Columbia Is Not a State Actor .................................................................... 4

        C.    Plaintiffs' Attack on Feminist Ideas Does Not Give Rise to a Sex Discrimination Claim Against Columbia ............................................................................. 4

    II.    PLAINTIFFS' CONTENT-BASED ATTACK ON THE TEACHING OF WOMEN'S STUDIES CANNOT BE RECONCILED WITH THE FIRST AMENDMENT .......................................... 8

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

*Page(s)*

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 5

*Brown v. Board of Education*,
    347 U.S. 483 (1954) ................................................................................................. 10

*Bryant v. Yellen*,
    447 U.S. 352 (1980) ................................................................................................... 4

*Guardians Ass'n v. Civil Service Comm'n*,
    463 U.S. 582 (1983) ................................................................................................... 7

*In re U.S. Catholic Conference*,
    885 F.2d 1020 (2d Cir. 1989) .................................................................................... 3

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (2008) ................................ 5

*Irvin v. Mister Car Wash*,
    2008 U.S. Dist. LEXIS 88531 (M.D. Fla. October 20, 2008) ........................................... 5

*Northeast Florida Chapter of the Ass'd Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ................................................................................................... 4

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................... 2

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1976) ................................................................................................... 3

*Weser v. Glen*,
    190 F. Supp. 2d 384 (E.D.N.Y.), *aff'd*, 41 Fed. Appx. 52 (2d Cir. 2002) ........................ 8

Defendants Institute for Research on Women and Gender at Columbia University ("IRWG"), School of Continuing Education at Columbia University ("SCE"), and The Trustees of Columbia University in the City of New York ("Columbia" or the "University"), respectfully submit this reply memorandum of law in further support of their motion to dismiss the First Amended Class Action Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

Plaintiffs can cite no case in which any court has ever done anything comparable to what they demand here. Brushing aside the First Amendment guarantee of academic freedom, plaintiffs insist that the Court can and should review the content of women's studies courses – the books taught, the lectures delivered, the ideas discussed – and determine whether the views of men and women expressed in those courses justify allowing them to be taught, warrant banning them, or require the creation of a countervailing men's studies curriculum.

In support of this unprecedented, and unconstitutional, demand, plaintiffs offer only rhetoric, their assertion that feminist theory exalts women and demonizes men. They repeat and elaborate their anti-feminist theme throughout the hundreds of paragraphs of their pleading, but what they produce is a political and ideological attack on a body of ideas, a statement of opposition to the substantive content of certain university courses, not an allegation of any act of discrimination by any person in any class at any time. Plaintiffs do not allege that they, or any other men, were ever excluded from any class at Columbia on account of their sex. They do not allege a single instance in which any man, in any class, suffered any adverse treatment because he was male. Nor do they allege a single example of any man losing any opportunity or benefit –

---

[1] Plaintiffs do not dispute that neither IRWG nor SCE, neither of which exists as a separate legal entity, is a proper party to this suit.

the award of a degree, graduate school admission, a job, a promotion – because women's studies is taught at Columbia or because there are no courses specifically denominated "men's studies." Plaintiffs allege that feminist ideas are evil, but they allege no actual facts that, if proven, would establish either their standing to sue or the existence of any act of discrimination.

The civil rights laws exist to remedy concrete discriminatory conduct, but none is alleged here. Those laws do *not* empower the courts to do what plaintiffs ask – to sit in judgment over ideas, to become the arbiters of what university faculty can, cannot, or must teach. The allegations of the Complaint fail to state a claim under the anti-discrimination laws. The trial of thoughts, ideas, and beliefs that plaintiffs propose would violate the most basic constitutional protection of academic freedom.

## ARGUMENT

### I.

### THE COMPLAINT ALLEGES NO FACTS THAT WOULD SUPPORT A FINDING THAT PLAINTIFFS HAVE STANDING TO SUE OR THAT COLUMBIA HAS DISCRIMINATED AGAINST MEN

A.  **Plaintiffs Lack Standing Because They Do Not Allege A Concrete and Particularized Injury**

Plaintiffs do not allege that they were excluded from a women's studies course; they never elected to take one. Accordingly, even if they could allege that the men who do take such courses are treated differently than the women, they could *not* allege that they have ever experienced such discriminatory conduct themselves. Plaintiffs do not allege any personal injury from the teaching of women's studies and, as a result, under well-settled Article III principles, they lack standing to sue. *See*, *e.g., O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) (plaintiffs lacked standing to challenge practices that had never injured them personally).

Citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1976), plaintiffs point out that an indirect injury may suffice to confer standing, but here, there is and can be no allegation of any injury at all. In *Village of Arlington Heights*, the plaintiff sought the rezoning of a parcel of land from single-family to multiple-family so that it could build low income housing. When the rezoning was denied, allegedly because of race discrimination, plaintiff could not build the housing. There is no analog to that injury in this case. While plaintiffs may believe that women's studies courses should be banned because of the ideas they allegedly present, that claim (in addition to running straight into the First Amendment) alleges nothing particular to Den Hollander or Nosal. It alleges no concrete injury to them, and they therefore lack standing. Plaintiffs counter that their "hostility to" and "disdain for" feminist ideas will "assure the concrete adverseness" that is the goal of standing doctrine, Pl. Mem. at 9, n. 10, but passionate intensity is not a substitute for concrete injury. *In re U.S. Catholic Conference*, 885 F.2d 1020, 1030 (2d Cir. 1989) ("It is obvious that plaintiffs express their . . . views strongly and articulately. Yet such strongly held beliefs are not a substitute for injury in fact").

Plaintiffs likewise allege no concrete and particularized injury from the absence of a curriculum expressly denominated "men's studies." While they argue that Columbia's failure to create a men's studies program prevents them from "competing on an equal footing with females in education, the work place, the courts, the culture, and society as a whole," Pl. Mem. at 17; *see also id.* at 7, 10, 18, they do not allege a single job, promotion, school admission, or other opportunity that either of them has ever been denied, or denied the ability to compete for, let alone the loss of any benefit or opportunity that could be rationally connected to

3

the fact that they have never taken a men's studies course at Columbia.[2]  In the cases on which Den Hollander and Nosal rely, the plaintiffs were denied a specific, concrete opportunity or benefit as a result of the allegedly discriminatory conduct,[3] but no such deprivation is alleged here.

    B.    **<u>Columbia Is Not a State Actor</u>**

Plaintiffs argue that the State's regulation of higher education – its registration of courses and its ability to revoke a school's charter – makes Columbia's decisions with respect to which courses it will or will not teach equivalent to state action.  As explained in the Columbia Defendants' opening memorandum, this argument has been rejected in case after case, both with respect to Columbia in particular and private universities in general.  There is simply no basis for a finding that a private university's determination of what to teach constitutes action under color of state law.

    C.    **<u>Plaintiffs' Attack on Feminist Ideas Does Not Give Rise to a Sex Discrimination Claim Against Columbia</u>**

Plaintiffs' contention that Columbia discriminates against men is based, in its entirety, on their critique of feminist ideas and on conclusory, rhetorical assertions of the injury men suffer from the alleged dominance of feminist thinking.  Plaintiffs do not allege anything

---

[2] Even the allegation that there are no men's studies courses at Columbia, i.e., no courses "providing male sensitive views," Pl. Mem. at 11, is so vague that it is meaningless.  There are thousands of courses, many taught by men, that study male philosophers, political figures, scientists, writers, and artists, past and present.  Plaintiffs do not allege anything about what is taught, or how it is taught, in any of these courses.  The allegation that nothing taught at Columbia is "male sensitive" is empty rhetoric.

[3] For example, in *Northeast Florida Chapter of the Ass'd Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 658-59 (1993), non-minority business owners had standing to challenge an ordinance setting aside certain city contracts for minority-owned businesses because it prevented them from competing for those contracts.  In *Bryant v. Yellen*, 447 U.S. 352, 366-67 (1980), a statute arguably limited to 160 acres the amount of certain irrigated land any one person could own.  Potential purchasers of excess land from those owners had standing to challenge a decision holding the statute inapplicable because it destroyed their opportunity to buy the land.  Plaintiffs here allege no such concrete injury.

4

about any actual person or about any actual course ever taught at Columbia.  They do not allege that men are excluded from women's studies courses, and they do not allege a single instance in which any man was treated differently than his female classmates in any course.  Plaintiffs make liberal use of phrases such as "intentional discriminatory impact" (Compl. ¶ 1(d)), "discriminatory intent" (*id.* ¶ 89), "hostile learning environment" (*id.* ¶ 94), "bias" (*id.* ¶ 101), "prejudice" (*id.* ¶ 104), "disparate treatment" (*id.* ¶ 123), "dissimilar treatment" (*id.* ¶ 124), "invidious discriminatory practices" (*id.* ¶ 125), and "disparate impact" (*id.* ¶ 188), but to survive a motion to dismiss "requires more than labels and conclusions," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff must "amplify a claim with some factual allegations" where, as here, "such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-78 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (2008).  Like the plaintiff in *Irvin v. Mister Car Wash*, 2008 U.S. Dist. LEXIS 88531, at *3-5 (M.D. Fla. October 20, 2008), plaintiffs ask the Court "to grapple with . . . history and sociology," based only upon "magic words . . . that are not supported by facts."  That does not state a claim.

    Similarly, the allegation that the absence of courses labeled "men's studies" discriminates against men is based solely on rhetoric.  To begin with, plaintiffs assert, over and over, that the University has "impos[ed] a unitary belief-system," Pl. Mem. at 3, through the "banishment of Men's Studies scholarship from Columbia," *id.* at 4; *see also id.* at 1 (Columbia has "created a climate of intolerance that effectively bans concepts and facts not considered 'Feminist'"); *id.* at 5 (Columbia is "suppressing . . . speech"); *id.* at 7 (Columbia is "withholding . . . facilities for the furtherance of scholarship and research in Men's Studies"); *id.* at 9 (Columbia "censors viewpoints").  But the rhetorical leitmotif that Columbia has "banished" men's studies is not supported by a single allegation of fact.  Plaintiffs do not name any professor

5

who was allegedly fired or denied a position, any textbook that was banned, any course proposal that was vetoed, any speaking invitation that was rescinded because of anti-male bias. Again, it is just rhetoric; no actual act of discrimination is alleged.

Indeed, even the claim that Columbia offers no courses with "male sensitive views" – let alone that it "banishes" the male perspective – is simply rhetoric. Plaintiffs do not explain how a philosophy course on Kant and Nietzsche; an art history course on the male nude in western art; a history course on the American presidency since 1945; a classics course on Plato; an American Studies course on the Supreme Court; a music course on Beethoven; or an English course on Milton (or Shakespeare, or Beckett and Nabakov, or Pinter, or O'Neill, or Williams and Miller) fails to be male sensitive.[4] Nor do plaintiffs allege anything to explain how the lectures, texts or discussions in any of the thousands of other courses offered at Columbia discriminate against men. Plaintiffs would like to see courses teaching about "the powers females often use to manipulate [men]" (Compl. ¶ 231), courses asserting "that females have a carte blanche to do whatever they want regardless of ethics or law" (*id.* ¶ 235), courses instructing "on how to avoid false accusations by females of sexual harassment or rape" (*id.* ¶ 240), and courses "alert[ing] males to the prevalent danger of female paternity . . . [and] marriage fraud" (*id.* ¶¶ 246-47), but no law allows plaintiffs (or the courts) to dictate the political and ideological perspective from which professors must teach.

---

[4] *See* http://www.columbia.edu/cu/philosophy/crs/main/intro/index.html (Philosophy);
http://www.columbia.edu/cu/arthistory/html/dept_courses_s_2009.html#1_2 (Art History);
http://www.college.columbia.edu/bulletin/depts/history.php?tab=courses (History);
http://www.columbia.edu/cu/classics/program/courses.html (Classics);
http://www.columbia.edu/cu/amstudies/courses/intermediate.html (American Studies);
http://www.columbia.edu/cu/bulletin/uwb/ (Music); http://www.columbia.edu/cu/english/ug_distcours.htm (English).

Plaintiffs' contention that women's studies courses, uncorrected by an explicit men's studies curriculum, injure men is likewise unsupported by any allegation of fact. While plaintiffs assert that Columbia "limits males, as opposed to females, in the enjoyment of advantages and opportunities, " Pl. Mem. at 7, and "grants females a real competitive advantage," *id.* at 10, the Complaint does not allege anything about any man denied any opportunity or advantage that would (or even might) have come to him had he been able to take a course labeled "men's studies." To be sure, plaintiffs cannot allege that the absence of a men's curriculum at Columbia has prevented male graduates from competing successfully with women for the highest positions in business, government, academia or the professions.

Finally, plaintiffs do not allege any facts from which it can be rationally inferred that the University administration harbors animus towards men, that Columbia has a motive to injure the male sex. Plaintiffs rely instead on a syllogism: women's studies courses are anti-male, so Columbia must be anti-male or it would not allow women's studies courses to be taught. But that is circular; plaintiffs allege nothing that would permit inferring a malign motive (a motive apparently shared by virtually every major university in the United States) for offering courses in women's studies.

Relying on a footnote in *Guardians Ass'n v. Civil Service Comm'n*, 463 U.S. 582, 607 n. 27 (1983), plaintiffs suggest that they do not have to allege a discriminatory motive, but only a disparate impact, if they claim a violation of the regulations under Title IX. That footnote can be read to permit a private action for violation of the disparate-impact regulations under Title VI, and plaintiffs argue that the same reasoning applies to Title IX, which was modeled on Title VI. In 2001, however, the Supreme Court expressly held that there is *not* a private right of action to enforce the disparate-impact regulations under Title VI:

7

> Neither as originally enacted nor as later amended does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602 [the disparate-impact regulations]. We therefore hold that no such right of action exists.

*Alexander v. Sandoval*, 532 U.S. 275, 293 (2001). Accordingly, applying the same reasoning to Title IX, there is no private right of action to enforce disparate-impact regulations; plaintiffs must allege *intentional* discrimination. *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y.) ("Because Title IX is derived from Title VI, *Alexander v. Sandoval* implies that no such private right of action [enforcing disparate-impact regulations] exists under Title IX as well") , *aff'd*, 41 Fed. Appx. 52 (2d Cir. 2002). In any event, as discussed above, plaintiffs do no allege any disparate impact. They offer only rhetoric, not a single example of any opportunity any man has been denied – with respect to employment, education, or otherwise – because women's studies courses are taught or because none of Columbia's many thousands of courses is denominated "men's studies."

## II.

### PLAINTIFFS' CONTENT-BASED ATTACK ON THE TEACHING OF WOMEN'S STUDIES CANNOT BE RECONCILED WITH THE FIRST AMENDMENT

Plaintiffs' memorandum never comes to grips with the profound First Amendment problem presented by their lawsuit. With a purely rhetorical claim that Columbia is "banishing" men's studies from its campus, a claim unsupported by any factual allegation, plaintiffs try to drape themselves in the mantle of free speech, but the fact remains that they are asking the Court to ban the teaching of women's studies based on the content of what is taught.

If this case were to proceed, it would entail the detailed examination of the lectures delivered, books assigned, and discussions held in dozens of women's studies classes to determine if, as plaintiffs allege, the professors teach that "females can engage in violence

8

against males, even premeditated murder, and escape just punishment" (Compl. ¶ 83), "depict[] fathers as bad parents, abusers, rapists and molesters" (*id.* ¶ 233), "condon[e] . . . the boiling of new born babies, the drowning of sons one after another, the liquidation of boyfriends or husbands" (*id.* ¶ 236), or otherwise present the points of view plaintiffs allege. Based on that review, the Court would then have to decide if the ideas professed and discussed were legal or illegal and, as to each course or book or lecture, ban it or permit it. Similarly, the Court would have to review the rest of Columbia's curriculum – subject matter, textbooks, lectures – to determine whether there are enough courses with "male sensitive views" to offset any anti-male views it finds in the women's studies courses. If not, it would have to enjoin Columbia to create a male sensitive curriculum and decide what such a curriculum looks like, whether it is courses about the powers females use to manipulate men, women's carte blanche to do whatever they want regardless of ethics or law, and the prevalent danger of female paternity and marriage fraud, as plaintiffs' suggest, or something else.

It is difficult to imagine an exercise more repugnant to the First Amendment, and as the cases cited in the Columbia Defendants' opening memorandum – which plaintiffs do not address – explain, the University's First Amendment right to academic freedom prohibits such an inquiry.[5] In a footnote, plaintiffs argue that reviewing and passing judgment on the ideas taught in women's studies courses, and everywhere else in the University, presents no problem because

---

[5] The Columbia Defendants' opening memorandum also noted that the Title IX regulations themselves do not allow the government to prohibit or require particular textbooks or curricular materials because, as the Department of Health, Education and Welfare explained, "to follow another interpretation might place the Department in a position of limiting free expression in violation of the First Amendment." (Columbia Mem. at 17-18). Plaintiffs respond that this bans government interference with the choice of books and curricular materials, but not with the courses themselves (Pl. Mem at 6 n.6), apparently suggesting that it is illegal to ban a book but appropriate to ban an entire course, and illegal to require a book but appropriate to require an entire suite of sufficiently male sensitive courses.

"Federal Courts have been doing that for years – most notably in *Brown v. Board of Education*, 347 U.S. 483 (1954)." Pl. Mem at 5 n. 5. In *Brown*, the Court struck down statutes that excluded African-American children from public schools reserved for whites (precisely the discriminatory conduct causing actual injury alleged nowhere in plaintiffs' complaint). *Brown* did not consider the freedom of private schools to control their own curriculum, and nothing in *Brown* or any of the thousands of subsequent cases remedying discrimination remotely suggests that the courts are empowered to pass on the content of university courses, mandating what must and must not be taught.

## CONCLUSION

For the reasons stated herein, the Complaint should be dismissed.

Dated: New York, New York
March 20, 2009

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
　ADELMAN LLP


By: s/ Robert D. Kaplan
Robert D. Kaplan (rkaplan@fklaw.com)
Jennifer P. Krakowsky (jkrakowsky@fklaw.com)
1633 Broadway
New York, New York 10019
(212) 833-1100

*Attorneys for Defendants Institute for Research on Women and Gender at Columbia University, School of Continuing Education at Columbia University, and Trustees of Columbia University in the City of New York*